UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:26-cv-62297-RS

DEVEN HURT,

Plaintiff,

v.

ADRIANA SOFIA URIARTE et al.,

Defendants.
_______________________________/

**PLAINTIFF DEVEN HURT'S RESPONSE TO DEFENDANT ROBERT URIARTE'S MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT**

Defendant Robert Uriarte's Motion To Dismiss Counts II and III of the Complaint (the "Motion") should be denied for the simple reason that it ignores the factual allegations in Plaintiff Deven Hurt's Complaint. After ignoring the facts alleged, the Motion declares that the Complaint lacks enough factual allegations to meet the standard set out by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Then, incredibly, the Motion argues that the factual allegations in the Complaint "do not cure" the lack of factual allegations and that the Court should ignore those allegations. For this radical proposition of law, the Motion cites no legal authority. Because the Complaint contains more than enough detail to show that Defendant Robert Uriarte directed and encouraged his sister, Defendant Ariana Sofia Uriarte, to defame Hurt, the Court should deny the Motion.

**LEGAL STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept the factual allegations supporting a claim as true." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). The Court also "must draw all

reasonable inferences from the factual allegations" in Hurt's favor. *Bailey v. Wheeler*, 843 F.3d 473, 482 (11th Cir. 2016). When a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then dismissal is inappropriate. *Iqbal*, 556 U.S. at 678.

## Factual Allegations

In 2019, Plaintiff Deven Hurt founded PredictionStrike, Inc., which was a fantasy-sports platform that allowed users to buy and sell "shares" of professional athletes. *See* ECF No. 1 ¶ 7. Defendant Robert Uriarte joined PredictionStrike in 2023 and became an avid user, depositing roughly $19,000 into the platform. *See id.* ¶ 9.

Though PredictionStrike originally flourished with over 300,000 users and a dozen employees, it dissolved in April of 2026. *See id.* ¶ 8. As with other users, Robert was not reimbursed for the money he had deposited into PredictionStrike. *See id.* ¶ 9. Consequently, Robert sought to sue PredictionStrike in arbitration, but the arbitration was dismissed for failure to pay the filing fee. *See id.* ¶ 11. He then sued PredictionStrike in New York state court. *See id.* ¶ 12.a.

After this, Robert became "unhinged." *Id.* ¶ 10. He began to harass, threaten, stalk, and disparage Hurt. The Complaint provides the following specific examples of Robert's unhinged behavior:

- Repeatedly, Robert wrote threatening direct messages to Hurt through Instagram and X. *See id.* ¶ 12.f ("If you want to end up in jail be my guest. . . . I have connections to the New York Attorney General.").
- Repeatedly, Robert sent e-mails to Hurt, threatening him with criminal charges, threatening to go to the FBI, or threatening to sue Hurt. *See id.* ¶ 12.a.

- Repeatedly, Robert commented on and engaged with Hurt's LinkedIn. *See id.* ¶ 12.e.
- Robert reached out to Harvard Law School, from which Hurt graduated, as well as other media companies, to raise "concerns regarding the conduct of Deven Hurt." *Id.* ¶ 12.c.
- Even though Hurt never represented Robert, Robert filed bar complaints in Delaware and Florida—where Hurt does not practice law or live—as well as New York. *See id.* ¶¶ 6, 12.b.
- To get Hurt fired, Robert sent at least one e-mail to Hurt's employer, because Robert found it "deeply concerning he's working in" his "position." *Id.* ¶ 12.d.

Not satisfied with these methods of harassment, Robert recently ratcheted his efforts.

In or around May of 2026, Robert directed his sister, Sofia, to defame Hurt by falsely accusing him of sexual assault and philandering. Sofia—who lives in South Florida, not New York—went to the Facebook group called "Are We Dating the Same Guy?| New York City NYC." *Id.* ¶ 15. That group (which numbered about 180,000 members) consists of members who can post anonymously about men that they date. *See id.* Sofia (anonymously) wrote a post in that group, where she claimed the following:

> He acted like he wanted to exclusive [*sic*], he spent months love bombing me and when I finally agreed to a date he was so sexually forward, wouldn't take no for an answer, kept trying to push my boundaries. We ended up dating for a few months and I found he's talking to multiple women. Stay back ladies.

*Id.* ¶ 17. This was all false, of course. Hurt has never met Sofia, let alone dated her. *See id.* ¶ 20. Nevertheless, that did not stop Sofia from posting Hurt's photograph for all of the group's 180,000 members when asked to identify the man mentioned in the post. *See id.* ¶¶ 17–20.

Hurt became aware of the post and Sofia's culpability when his then girlfriend inquired for details from the anonymous poster. When Hurt's girlfriend reached out, the Facebook profile

that appeared was Sofia's. *See id.* ¶¶ 19–20. When Hurt's girlfriend informed Sofia that she was dating Hurt, Sofia (in a telltale sign of culpability) refused to respond and took the post down. *See id.* ¶ 20.

Based on these allegations, the Complaint alleges a claim against Sofia for defamation (Count I), a claim against Robert for aiding and abetting defamation (Count II), and a claim against both defendants for conspiracy to commit defamation (Count III).

## LEGAL ARGUMENT

Robert does not contest that Sofia's post was defamatory. Instead, Robert asserts that the Complaint fails to allege sufficient facts that Robert participated in Sofia's defamation. Because the Complaint alleges more than sufficient facts to "draw the reasonable inference" that Robert is "liable for the misconduct alleged," the Motion must be denied. *Iqbal*, 556 U.S. at 678.

### I. The Complaint Alleges Robert's Knowledge and Substantial Assistance, So It Alleges a Claim for Aiding and Abetting Defamation.

"To state a claim for aiding and abetting a tort in Florida," a complaint "must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [*sic*]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Taubenfeld v. Lasko*, 324 So. 3d 529, 544 (Fla. Dist. Ct. App. 2021) (internal quotation marks omitted). The Motion does not contest that the Complaint properly alleges an underlying wrong—the defamation. The Motion argues, rather, that the Complaint failed to allege knowledge and substantial assistance. *See* Motion at 3 ("Those allegations largely recite the knowledge and substantial-assistance components of the claim without pleading facts showing how either occurred.").[1] Not so.

[1] Robert served Hurt with a copy of the Motion that is longer than the version of the Motion on the docket.

Begin with the Motion's argument that the Complaint failed to allege facts sufficient to show Robert's knowledge. Knowledge can be alleged generally, even in fraud cases (and defamation is not fraud): "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b); *see also Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178–79 (11th Cir. 2025) (rejecting notion that any form of heightened factual specificity is required to allege knowledge). Here, the Complaint alleges that Robert knew of Sofia's post. *See* ECF No. 1 ¶ 35.

Regardless, the Complaint alleges more than sufficient facts to "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Robert knew about Sofia's post. For starters, it explicitly alleges that Robert directed Sofia to make the post, which means he knew that Sofia would make the defamatory post. *See* ECF No. 1 ¶ 36 ("By directing and encouraging Sofia to make the Defamatory Post, Robert substantially assisted and encouraged Sofia's defamation of Hurt.").

Likewise, the Complaint alleges enough facts to show Robert's substantial assistance. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so . . . ." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017). Again, the Complaint alleges that Robert directed Sofia to make the post, which is substantial assistance. *See* ECF No. 1 ¶ 36.

The Motion ignores that the Complaint alleges that Robert directed Sofia to make the post. Instead, Robert gripes that the Complaint does not detail when or how Robert directed Sofia to do so. But nothing in the law requires Hurt to explain how or when Robert directed Sofia to make the post. *See Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1311 (S.D. Fla. 2011) ("Even after *Twombly*, . . . a plaintiff need not allege all facts in novelistic

detail."). Simply put, the Complaint alleges that Robert directed and encouraged Sofia—that is a factual allegation, and that is enough.

But even if the factual allegation that Robert directed Sofia's actions were somehow insufficient, the Complaint provides a dozen examples of Robert's unhinged behavior toward Hurt that allow the Court, "draw[ing] on its judicial experience and common sense," to conclude that the Complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. It alleges that Hurt never met Sofia. It alleges that Sofia and Robert are siblings. And it alleges that Sofia directed her statements to New York City (where Hurt lives) when she lives in South Florida. Drawing all reasonable inference in Hurt's favor, *see Bailey*, 843 F.3d at 482, "[t]he only plausible explanation for Sofia's false and defamatory post about Hurt [] is that Robert told Sofia to make and post the Defamatory Post," ECF No. 1 ¶ 22.

## II. The Complaint Alleges an Agreement To Conspire.

A civil conspiracy requires "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damages." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997). In the Motion, Robert attacks only the first element, arguing that the Complaint fails to allege any details about the agreement between Sofia and Robert. Yet those details are unnecessary.

A civil conspiracy is "defined as an express or implied agreement of two or more persons." *Witmer v. Dep't of Bus. & Prof'l Regul.*, 631 So. 2d 338, 342 (Fla. Dist. Ct. App 1994). Because it can "be proven with circumstantial evidence," "proof of the formal agreement is not necessary." *Green v. State*, 999 So. 2d 1098, 1099 (Fla. Dist. Ct. App. 2009). Hence, to prevail, Hurt must merely "plead enough factual matter (taken as true) to suggest that an agreement was made, *i.e.*," he "must provide some factual context suggesting [that the parties reached] an

agreement." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 556) (alteration in original) (internal quotation marks omitted). And that standard Hurt has met in spades. Again, for most of a year, Robert harassed and stalked Hurt. Then, suddenly, Robert's sister, who has never met Hurt, makes a defamatory post in a forum for New York City, where the sister does not even live. In sum, this factual context allows a factfinder to draw the reasonable inference that Robert and Sofia reached an agreement to make the post. *See* ECF No. 1 ¶ 22. Dismissal is thus inappropriate.

## CONCLUSION

For these reasons, the Court should deny Defendant Robert Uriarte's Motion To Dismiss Counts II and III of the Complaint.

* * *

Dated: September 23, 2026

TOTH FUNES PA

s/Brian W. Toth

Brian W. Toth
Florida Bar No. 57708
Freddy Funes
Florida Bar No. 87932
Ingraham Building
25 Southeast Second Avenue, Suite 805
Miami, Florida 33131
(305) 717-7850
btoth@tothfunes.com
ffunes@tothfunes.com

*Counsel for Plaintiff*